IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KRISH LAL ISSERDASANI and
HAMIDREZA KHADEMI,

                Plaintiffs,                  OPINION AND ORDER

   v.                                               25-cv-283-wmc

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; the U.S.
DEPARTMENT OF HOMELAND SECURITY; and
TODD LYONS, in his official capacity as Acting
Director of U.S. Immigration and Customs
Enforcement,

                Defendants.

Plaintiffs Krish Lal Isserdasani and Hamidreza Khademi have filed a complaint for declaratory and injunctive relief against Kristi Noem, in her official capacity as Secretary of Homeland Security ("DHS"), DHS, and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), claiming that DHS and ICE unlawfully terminated records of their F-1 international student visa status in the Student and Exchange Visitor System ("SEVIS"). (Dkt. #1.) Plaintiffs further claim that defendants violated their right to due process and the Administrative Procedure Act ("APA") by terminating their SEVIS records and putting them in jeopardy of unjustified, accelerated deportation. Plaintiffs have filed an emergency motion for a temporary restraining order, asking the court to: (1) enjoin defendants' decision to terminate plaintiffs' records in SEVIS and their F-1 student visas; and (2) enjoin defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of that pending a decision in this case, including causing plaintiffs' visas to be revoked or detaining or removing plaintiffs. (Dkt. #4.)

The court held a telephonic hearing with counsel for all parties on April 14, 2025, during which the court entered an oral ruling on the motion for a temporary restraining order. For reasons set forth below and stated on the record at the hearing, the motion for a temporary restraining order is granted in part as to plaintiff Isserdasani pending a preliminary injunction hearing on April 28, 2025, and reserved in part as to plaintiff Khademi.

BACKGROUND[1]

Congress has authorized non-immigrant F-1 visas for international students who enroll in approved academic institutions. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States with F-1 status, an international student is granted permission to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or participating in authorized "practical training" following the completion of studies. 8 C.F.R. §§ 214.2(f)(6), 214.2(f)(10)(i). To maintain lawful status, nonimmigrant visa-holders (such as students with F-1 visas) may not engage in certain specified activity, such as engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.2(e)-(g).

Criminal activity, for purposes of maintaining visa status, is defined to include instances in which a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). For an international student, these specified actions may result in the termination of their SEVIS records, which effectively ends a student's F-1 status.

---

[1] Unless otherwise indicated, the following facts are taken from exhibits attached to the complaint and plaintiffs' declarations.

2

SEVIS is a centralized database that tracks international students' compliance with their F-1 status.[2] In the absence of a student's conduct causing a status violation, ICE can *only* terminate SEVIS records under three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

A. **Krish Lal Isserdasani**

Plaintiff Krish Lal Isserdasani is a 21-year-old undergraduate student from India, who has been pursuing a bachelor's degree in computer engineering at the University of Wisconsin-Madison with an F-1 student visa since 2021. Having maintained full-time enrollment and good academic standing, Isserdasani is now in the final semester of his senior year with less than 30 days remaining until an expected graduation on May 10, 2025.

Isserdasani acknowledges that he was arrested on November 22, 2024, after he and his friends got into a verbal argument with another group while walking home late at night from a bar. Although Isserdasani was arrested for disorderly conduct, the District Attorney declined to pursue charges after reviewing the case. As a result, Isserdasani never had to appear in court and believed the matter was completely resolved with no possible immigration consequences. Aside from this encounter, Isserdasani has had *no* other interactions with law enforcement.

---

[2] *See* About SEVIS, Dep't of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 14, 2025).

Nevertheless, on April 4, 2025, the University of Wisconsin-Madison's International Student Services (ISS") office informed Isserdasani by an email out of the blue that his SEVIS record had been terminated by the U.S. Student and Exchange Visitor Program ("SEVP") operated by DHS. (Pl. Comp. Ex. A (dkt. #1-2) at 2.) The reason given was as follows: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (*Id*.) The email states further, "A termination for this reason does not have a grace period to depart the U.S.," and "[a]ll employment benefits, including on-campus employment and any practical training you may have had authorized, end immediately when a SEVIS record is terminated. Therefore, you no longer have authorization to work in the United States." (*Id*.)

Isserdasani received no communication from ICE, the university, or the State Department regarding any revocation of his visa. He was given no warning, no opportunity to explain or defend himself, and no chance to correct any potential misunderstanding before his F-1 student visa record was terminated in SEVIS.

As a result of the termination, Isserdasani will be prevented from completing his degree and applying for Optional Practical Training ("OPT") to gain work experience as authorized by his F-1 student visa. According to the email notifying Isserdasani that his SEVIS record was terminated, his authorization to remain in United States ends on May 2, 2025, before completing his final semester and graduating on May 10. (Pl. Comp. Ex. A (dkt. #1) at 2.) Isserdasani and his family have reportedly invested approximately $240,000 in his education in the United States, and he stands to lose $17,500 in tuition for the current semester. He would also be liable for rental payments for the next four months despite being unable to remain in the country.

Finally, Isserdasani reports that the psychological impact of the termination has been overwhelming, causing difficulty in sleeping and fear that he will be placed in immediate detention and deportation. So much so that he reports being afraid to leave his apartment for fear of being apprehended at any moment.

### B. Hamidreza Khademi

Hamidreza Khademi is a 34-year-old citizen of Iran who has been enrolled in a master's degree program in architecture at Iowa State University with an F-1 student visa since 2021. After graduating in December 2023, he was approved for OPT through December 15, 2024, and was subsequently approved for an extension through December 15, 2026, which is available to F-1 international students in science, technology, engineering, and mathematics ("STEM") programs.

Under his OPT authorization, Khademi has been working as an assistant project manager at Stantec, where he was overseeing multiple infrastructure projects at Dallas-Fort Worth International Airport. He and his wife are expecting their first child, who is due to be born in 2 to 3 months.

Khademi acknowledges that he was arrested on February 28, 2024, and charged with "Evading Arrest/Detention w/ Motor Vehicle" in Texas. Khademi explains that he did not know the officer behind him wanted him to stop. The reason the officer wanted to stop Khademi is that he had failed to use his turn signal when changing lanes. Moreover, after reviewing the video evidence, the Texas Department of Public Safety determined that there was no violation and decided not to file any charges. Aside from this encounter, Khademi also has had no other interactions with law enforcement.

5

Nevertheless, on April 10, 2025, Iowa State University also informed Khademi by email that his SEVIS record had been terminated by DHS. Just like Isserdasani, Khademi was given the following reason: "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Pl. Comp. Ex. A (dkt. #1-2) at 4.) So, too, Khademi was advised that based on the termination of his SEVIS record he no longer had "valid F-1 immigration status in the U.S." (*Id.*) With loss of his F-1 visa, Khademi was further advised that "all employment authorization, on- or off-campus ends immediately . . . so please cease any employment immediately." (*Id.*)

Because of the termination, Khademi can no longer continue his employment or apply for an extension of work authorization, which is available for F-1 students in STEM programs. The elimination of his salary so close to the birth of his child has also created a "catastrophic financial hardship" for his family. In addition to the significant stress created by his loss of income, Khademi lives in a similar fear of detention and deportation as Isserdasani, causing Khademi to fear every time he leaves his apartment.

OPINION

Plaintiffs claim that the termination of their SEVIS records by DHS/ICE was unauthorized in violation of: (1) the APA, 5 U.S.C. § 706(2)(A), (C)&(D) because they have not engaged in any specified activity defined in 8 C.F.R. § 214.1(e)-(g); (2) the APA, 5 U.S.C. § 706(a), because the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (3) the Fifth Amendment right to due process because SEVIS registration is a requirement for an international student to remain enrolled, giving rise to a constitutionally protected property interest that requires notice and an opportunity to be

6

heard; (4) the APA, 5 U.S.C. § 706(a), because the final agency action in terminating plaintiffs' SEVIS records based on improper grounds without prior notice or opportunity to be heard is "contrary to constitutional right, power, privilege, or immunity"; (5) the "*Accardi* Doctrine" found in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which requires agencies to follow their own rules and procedures, which defendants did not do when they terminated plaintiffs' SEVIS records based on improper grounds; and (6) the Fifth Amendment Due Process Clause by putting plaintiffs at risk of unlawful detention without prior notice. (Dkt. #1.)

## I. Venue

As an initial matter, plaintiffs rely on 28 U.S.C. § 1391(e)(1) to establish venue for their joint complaint against the defendants, who are federal officials. (Pl. Comp. (dkt. #1) at 2 ¶ 7.) Under 28 U.S.C. § 1391(e), "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and *with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party*." 28 U.S.C. § 1391(e) (emphasis added).

As plaintiffs point out, Isserdasani resides in Madison, Wisconsin, and there is no real property involved, making venue proper as to him under § 1391(e)(2)&(3). (Pl. Comp. (dkt. #1) at 2 ¶ 7.) However, plaintiffs include no facts showing that venue is proper for the claims brought by Khademi, who appears to have *no* ties to the Western District of Wisconsin, nor do the events or omissions giving rise to his claims. Because it is unclear whether the claims by plaintiff Khademi were properly filed in the Western District, the court must reserve ruling on the motion for a temporary restraining order as far as his claims are concerned, at least pending further briefing by the parties.

## II. Motion for Temporary Restraining Order

Plaintiffs move for a temporary restraining order on the grounds that they have not done anything to trigger the termination of their SEVIS records. (Dkt. #5, at 13.) They argue, therefore, that defendants lacked any basis under 8 C.F.R. 214.1 to terminate their F-1 student status and that doing so was -- at a minimum -- arbitrary, capricious, and not in accordance with the law for purposes of a claim under the APA, 5 U.S.C. § 706(2)(A), and was also done without any notice or opportunity to be heard.

The standard for determining whether a temporary restraining order or preliminary injunction is appropriate is the same. *See Planned Parenthood of Wis., Inc. v. Van Hollen*, 963 F. Supp. 2d 858, 865 (W.D. Wis. 2013) (citing *Winnig v. Sellen*, 731 F. Supp. 2d 855, 857 (W.D. Wis. 2010)). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *International Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (quoting

*Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021)). If the movant makes this showing, the district court must then consider two additional factors: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*.

### A. Reasonable Likelihood of Success

Isserdasani's SEVIS record certainly appears to have been terminated for an arrest on a misdemeanor disorderly conduct charge, which was quickly dropped altogether by the charging authority. As noted above, a non-immigrant visa-holder such as an F-1 international student fails to maintain status, and his visa may be terminated, on the grounds of "criminal activity," if *convicted* of a "crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). In Wisconsin, "[w]hoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor," which carries a maximum sentence of 90 days imprisonment. Wis. Stat. §§ 939.51, 947.01(1). Even if this misdemeanor offense qualifies as a crime of violence, the charge was declined by the Dane County District Attorney and was not pursued or proven. As a result, Isserdasani was not convicted of a crime of violence or an offense that could result in a sentence of more than one year.

Accordingly, plaintiff Isserdasani has shown a substantial, if not overwhelming, likelihood of success on the merits of his claim in Count 2 that DHS violated the APA when it

9

summarily terminated his F-1 student status in SEVIS without cause. Specifically, based on the record currently before the court, Isserdasani is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

### B. Irreparable Harm and Adequacy of Remedy at Law

Isserdasani faces possible devastating irreparable harm due to the termination of his F-1 student record in SEVIS, which will prevent him from completing his degree just *one* month away from his expected graduation with a four-year undergraduate degree in computer engineering from a premier academic institution in that field. The loss of timely academic process alone is sufficient to establish irreparable harm. *See Liu v. Noem*, No. 25-cv-133-SE, op. at 4 (D.N.H. April 10, 2025) (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS). Given the amount of Isserdasani's educational expenses and potential losses from having to leave the United States without obtaining his degree, the court concludes that Isserdasani credibly demonstrates that he faces irreparable harm for which he has no adequate remedy at law in the absence of injunctive relief. *See Jie Fang*, 935 F.3d at 183-85.

### C. Balancing Analysis

Where a plaintiff satisfies the threshold requirement for a preliminary injunction, courts weigh "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted." *K.C. v. Individual Members of the Medical Licensing Bd. of Indiana*, 121 F.4th 604, 632

(7th Cir. 2024) (citations and internal quotation marks omitted). "This is a sliding scale -- the more likely [the moving party] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id*. at 633 (alteration in original). Part of this balancing process includes evaluating the public interest and the effects the preliminary injunction -- and its denial -- would have on nonparties. *Id.*

For reasons set forth above, plaintiff Isserdasani has demonstrated a reasonable likelihood of success on his claim that his F-1 international student SEVIS record was wrongly terminated in violation of agency regulations. Moreover, the marginal harm, if any, to defendants does not begin to equate with the likely harm to plaintiff. Likewise, the public, which includes the taxpayers of the State of Wisconsin, has an overriding interest in seeing that students at the University of Wisconsin are able to be educated and obtain degrees earned with both sweat equity and tuition payments, unless there is a good reason to deny either. This is a contract between the State of Wisconsin and its students. So far, defendants have offered nothing to suggest Isserdasani is undeserving of a degree after years of effort and payment of tuition, much less should be deported from the United States before completing his degree.

Accordingly, the court concludes that all relevant factors favor plaintiff.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for a temporary restraining order (dkt. #4) is GRANTED in part as set forth below.

2) Pending a preliminary injunction hearing, defendants are enjoined from (1) terminating plaintiff Krish Lal Isserdasani's F-1 student status records from the Student and Exchange Visitor System ("SEVIS"); and (2) directly or indirectly

enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate his SEVIS records, including revoking Isserdasani's visa or detaining him.

3) The court will hold a preliminary injunction hearing at 10:00 a.m. on April 28, 2025.

4) Plaintiff Isserdasani shall file proposed findings of fact consistent with the court's procedures for preliminary injunctions by Friday April 18, 2025. Defendants may file under the same procedures by April 23, 2025.

5) Plaintiff Hamidreza Khademi may file additional briefing regarding the venue issue on which the court has reserved ruling by April 15, 2025. Counsel for defendants may file any briefing on that issue by the following day, April 16, 2025.

Entered this 15th day of April, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge