IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KRISH LAL ISSERDASANI,

                              Plaintiff,                          OPINION AND ORDER

        v.                                                            25-cv-283-wmc

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, the U.S.
DEPARTMENT OF HOMELAND SECURITY, and
TODD LYONS, in his official capacity as Acting
Director of U.S. Immigration and Customs
Enforcement,

                              Defendants.

        Plaintiff Krish Lal Isserdasani filed a complaint for declaratory and injunctive relief

against Kristi Noem, in her official capacity as Secretary of Homeland Security, the U.S.

Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as

Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), claiming that

DHS and ICE unlawfully terminated records of his F-1 student visa status in the Student

and Exchange Visitor System ("SEVIS") in violation of both his rights to due process and

the Administrative Procedure Act ("APA"), (1) affecting his standing as a current

University of Wisconsin student, as well as eligibility to be considered for a practical

training position following his graduation on May 10, 2025, and (2) placing him in

jeopardy of possible accelerated detention and deportation without adequate notice or

opportunity to be heard.

        After a telephonic hearing with counsel for all parties, the court granted plaintiff's

emergency motion for a temporary restraining order on April 15, 2025, and scheduled a

preliminary injunction hearing for April 28, 2025. (Dkt. #7.) Finding a strong likelihood of success on plaintiff's claim that DHS's termination of his F-1 student status on SEVIS was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A), the court extended the TRO and will now grant a preliminary injunction for the reasons set forth below.

BACKGROUND[1]

## I. Non-Immigrant F-1 Visa Status

Under the Immigration and Nationality Act ("INA") and its implementing regulations, international students may be admitted to the United States with a non-immigrant F-1 visa to pursue a full course of study at an approved academic institution. 8 U.S.C. § 1101(a)(15)(F)(i). Once a student enters the United States with an F-1 visa, the student is granted F-1 student status and permitted to remain in the United States for the duration of status as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f).

To be admitted in F-1 status, an applicant must present a Form I-20, issued by a school certified by DHS's Student Exchange Visitor Program ("SEVP"). 8 C.F.R. § 214.2(f)(1). In particular, certified schools must issue the Form I-20 using SEVIS, the

---

[1] Unless otherwise indicated, the following facts are taken from the defendants' response to plaintiff's proposed facts (Dkt. #16) and plaintiff's testimony at the preliminary injunction hearing. The court focuses on the parties' undisputed statements of fact for purposes of deciding the motion for a preliminary injunction.

centralized database that DHS uses to track international students with F-1 status.[2] (Watson Decl. (dkt. #15) ¶ 3.)  SEVP is authorized to update, maintain, and terminate SEVIS records as needed to "carry out the purposes of the F-1 visa program."  (*Id*. at ¶ 4.) DHS and ICE also use SEVIS to monitor foreign students who have been lawfully admitted to the United States but violate the terms of their admission, pose a threat to national security or public safety, or are involved in criminal activity.  (*Id*. at ¶ 5.)

In addition, SEVIS is utilized by colleges and universities to assure that their international students are maintaining their F-1 status.  In order for a school to be certified by SEVP, the school must have dedicated school officials ("DSOs"), who are responsible for assisting and overseeing enrolled students holding F-1 visas.  *Kim v. Holder*, 737 F.3d 1181, 1182 n.2 (7th Cir. 2013).  DSOs must also update and maintain student records in SEVIS to reflect whether they have maintained this status.  *Id*.; *see also* 8 C.F.R. § 214.3(g) (outlining recordkeeping and reporting requirements for DSOs at certified schools).

An international student with F-1 status is granted permission to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or engaging in "authorized practical training following the completion of studies."  8 C.F.R. § 214.2(f)(5)(i).  Once a student has completed their course of study and any authorized practical training, they generally have 60 days to either depart the United States or transfer to another approved academic institution.  8 C.F.R. § 214.2(f)(5)(iv).

---

[2] *See* About SEVIS, Dep't of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited Apr. 29, 2025).

In addition, non-immigrant visa-holders (such as students with F-1 visas) must refrain from certain specified activity to maintain their lawful visa status, such as engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.1(e)-(g). For purposes of maintaining status, criminal activity is narrowly defined as a "conviction . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed [*i.e.*, a felony offense] (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). In the absence of a student's conduct causing a status violation, a student's F-1 status can only be terminated under three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) notification published in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d).

A student who "fails to maintain a full course of study" without approval from a DSO, or otherwise "fails to maintain status," must leave the country immediately or seek reinstatement of their status. 8 C.F.R. § 214.2(f)(5)(iv). Reinstatement is discretionary, and, if denied, the student may not appeal the decision. 8 C.F.R. 214.2(f)(16)(ii); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 176 (3d Cir. 2019).

## II. Plaintiff's F-1 Status

Plaintiff Krish Lal Isserdasani, a 21-year-old undergraduate student from India, has been pursuing a bachelor's degree in computer engineering at the University of Wisconsin-Madison with an F-1 student visa since 2021. He expects to graduate on May 10, 2025, and has applied for Optional Practical Training ("OPT") to gain work experience related

4

to his field of study.  Less than 30 days from his expected graduation, however, UW-Madison's International Student Services ("ISS") office informed Isserdasani by an email that his SEVIS record had been changed from "active" to "terminated" by the SEVP.  (Pl. Compl. Ex. A (dkt. #1-2) at 2.)  The email, which contains a screenshot of Isserdasani's SEVIS record, provides no reason for SEVP's termination decision, other than the following: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated."  (*Id*.)  The email states further, "A termination for this reason does not have a grace period to depart the U.S.," and "[a]ll employment benefits, including on-campus employment and any practical training you may have had authorized, end immediately when a SEVIS record is terminated.  Therefore, you no longer have authorization to work in the United States."  (*Id*.)

Isserdasani acknowledges that he was arrested for disorderly conduct on November 22, 2024, after he and his friends got into a verbal argument with another group while walking home late at night from a bar.  Defendants confirm that SEVP terminated Isserdasani's SEVIS record based on this arrest.  (Watson Decl. (dkt. #15) at ¶ 8.)  However, the Dane County District Attorney declined to pursue charges after reviewing the case.  As a result, Isserdasani was never formally charged, required to appear in court,

or convicted of any crime, much less a crime of violence as defined by 8 C.F.R. § 214.1(g).[3] Thus, there is no evidence that Isserdasani has engaged in activity that would warrant the termination of his SEVIS records or his F-1 student visa status, which was done without the statutory or regulatory authority and without notice or an opportunity to be heard.

### III. Procedural Posture

Nevertheless, fearing that he might be arrested, detained, and summarily deported without completing his degree or engaging in a planned, post-graduate OPT as authorized by his F-1 student visa status, Isserdasani filed a complaint for declaratory and injunctive relief, asserting six claims against defendants: (1) unauthorized termination of his SEVIS records in violation of the Administrative Procedure Act ("APA"); (2) arbitrary and capricious termination of SEVIS records in violation of the APA; (3) violation of the Fifth Amendment right to procedural due process; (4) violation of procedural due process under the APA; (5) unlawful SEVIS termination in violation of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (the "*Accardi* doctrine"); and (6) potential unlawful detention in violation of the due process clause of the Fifth Amendment. (Dkt. #1.) Isserdasani also moved for an emergency temporary restraining order on the grounds that he had neither engaged in any specified activity defined in 8 C.F.R. § 214.1(e)-(g) nor done anything to trigger the termination of his SEVIS record. (Dkt. #5, at 13.)

---

[3] As noted above, a non-immigrant visa-holder (such as an F-1 international student) fails to maintain status if convicted of a "crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). However, the offense allegedly committed by plaintiff is a Class B misdemeanor, which carries a maximum sentence of 90 days' imprisonment. Wis. Stat. §§ 39.51, 947.01(1). Moreover, plaintiff was never convicted of *any* crime.

After a hearing with counsel for both parties on April 14, 2025, the court orally granted Isserdasani's emergency motion for a temporary restraining order. In an opinion and order issued the following day, the court confirmed that he had shown "a substantial, if not overwhelming, likelihood of success on the merits of his claim in Count 2 that DHS violated the APA when it summarily terminated his F-1 student status in SEVIS without cause." (Dkt. #7, at 9-10.) Specifically, the court found that Isserdasani was "likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A)." (*Id*. at 10.) Concluding that the balance of all other relevant factors favored Isserdasani, the court temporarily restrained defendants from terminating his SEVIS record or taking any other action, directly or indirectly, resulting in legal consequences as the result of the decision to terminate his SEVIS records, including revoking his visa or detaining him. (*Id*. at 11-12.)

At a hearing on April 28, 2025, the court extended the TRO pending this written decision on plaintiff's motion for a preliminary injunction.

## OPINION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *International Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437,

446 (7th Cir. 2022) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021)). The showing of likelihood of success on the merits must be "strong," which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020). If the movant makes this showing, the district court must then consider two additional factors: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*.

After hearing testimony from plaintiff and argument from the government at the preliminary injunction hearing on April 28, 2025, the court is persuaded that the balance of factors favor a grant of preliminary injunctive relief to maintain the status quo for the duration of this lawsuit for the reasons set forth below.

### A. Likelihood of Success on the Merits

The APA governs judicial review of agency actions and waives federal sovereign immunity in some circumstances to allow for equitable relief from agency action or inaction. 5 U.S.C. § 702. Under the APA, a court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion," in excess of statutory authority, or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). Here, Isserdasani has presented evidence that he has maintained his lawful F-1 visa status by pursuing a full course of study and expects to receive his undergraduate degree this week. He has further applied for OPT, in which he is also authorized to engage

8

for purposes of obtaining work experience related to his field under a valid F-1 visa. Isserdasani testified at the April 28, 2025 hearing that, without reactivation of his SEVIS record following this court's entry of a TRO, the University of Wisconsin would have maintained its position that he was required to cease his undergraduate studies.  (Apr. 28, 2025 Tr. at 15-16, 19, 21.)  Regardless, without maintaining an active SEVIS record, defendants do not dispute that Isserdasani could no longer apply for a new Form I-20 to extend his F-1 visa status for purposes of OPT.  (*Id.* at 21, 35.)

In addition, defendants conceded at the hearing that Isserdasani's SEVIS record was terminated for a subsequently dropped, misdemeanor charge that does not begin to meet the criteria for criminal activity found in 8 C.F.R. § 214.1(g).  (Apr. 28, 2025 Tr. at 5.) Similarly, the government is unable to offer any other reason set forth in 8 C.F.R. § 214.1(d) or otherwise that might justify the termination of Isserdasani's SEVIS record. Further, Isserdasani was given no notice, no opportunity to be heard, or right of appeal before defendants terminated his status without justification.  (Apr. 28, 2025 Tr. at 8.) Based on this record, Isserdasani has made a strong showing that defendants summarily terminated his SEVIS record and effectively his F-1 status to continue with OPT without cause, individualized consideration, or adequate explanation.   Specifically, Isserdasani has made clear showing that defendants did not comply with 8 C.F.R. § 214.1(d) when they terminated his SEVIS record and that doing so was arbitrary, capricious, an abuse of discretion, and not in accordance with the law under 5 U.S.C. § 706(2)(A).  *See Student Doe v. Noem*, No. 2:25-cv-01103, 2025 WL 1134977, at *5 (E.D. Cal. Apr. 17, 2025) ("Because plaintiff offers evidence supporting the conclusion that neither reason given for

termination is permitted by the applicable regulations, plaintiff will also likely show that defendants' decision to terminate his SEVIS record, effectively terminating his F-1 status, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA."); *John Roe v. Noem*, No. CV-25-40, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("Therefore, the Court finds that Plaintiffs are likely to succeed on the allegation that Defendants' termination of Plaintiffs' F-1 student status under the SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction.").

Nevertheless, defendants argue that Isserdasani is not likely to succeed on the merits of his APA claims because (1) review under the APA is barred by the Privacy Act; and (2) the termination of SEVIS records is not a "final" agency action under the APA.  These arguments are addressed briefly below.

## 1.  The Privacy Act

Defendants argue that the court lacks subject matter jurisdiction over Isserdasani's challenge to the contents of his SEVIS record under the APA because the APA's waiver of sovereign immunity under that act does not extend to such a claim.  (Dkt. #14, at 15-16.) Specifically, defendants argue that the APA does not waive the United States' sovereign immunity as to Isserdasani's claims because the Privacy Act provides the exclusive means for challenging the termination of SEVIS records *and* Isserdasani lacks standing as a foreign national to invoke such a challenge.  (*Id*. at 19, 21.)

The APA waives sovereign immunity for actions in federal court by "person[s] suffering legal wrong because of agency action."  5 U.S.C. § 702.  This general waiver "does

not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702.)  Under the Privacy Act, agencies that maintain "a system of records" concerning individuals are required to do so "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual." 5 U.S.C. § 552a(e)(5).  The Privacy Act allows an individual to seek redress in federal court if an agency does not allow the individual to review his record, *see* § 552a(g)(1)(B), or if an agency has refused to amend a record, *see* § 552a(g)(1)(A).  An individual also may challenge an agency's failure to maintain records with the accuracy, relevance, timeliness and completeness required by § 552a(e)(5), if the agency action had an "adverse" effect on him.  § 552a(g)(1)(C).  *See, e.g., Bassiouni v. Fed. Bureau of Investigation*, 436 F.3d 712, 718-19 (7th Cir. 2006)(involving a law professor's suit under the Privacy Act's enforcement provisions to amend or expunge records of his contacts and activities maintained by the FBI that he maintained were erroneous).

As other courts have held, however, "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *All. for Retired Americans v. Bessent*, No. CV 25-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025) (concluding that the availability of a Privacy Act suit for damages did not take the plaintiffs' case outside the scope of the waiver of sovereign immunity under § 702 of the APA and did not affect subject-matter jurisdiction over the plaintiffs' APA claims); *see also Madan v. Noem*, 1:25-cv-419, 2025 WL 1171572, at *5 (W.D. Mich. Apr. 23, 2025) (rejecting a similar

11

argument by defendants that the Privacy Act precludes an APA claim); *Student Doe*, 2025 WL 1134977, at \*4-5 (same).  Further, Isserdasani has not filed suit to challenge the accuracy, relevance, timeliness or completeness of his SEVIS record;  he is expressly challenging the *decision* to list his F-1 visa status as "terminated" in SEVIS, which effectively terminated his F-1 student status to continue matriculation and graduation from the University of Wisconsin, as well as subsequent OPT, without statutory or regulatory authority.

Moreover, Isserdasani cannot avail himself of the Privacy Act to challenge this determination because it is not "'a vehicle for amending the judgments of federal officials . . . as those judgments are reflected in records maintained by federal agencies.'" *Barnett v. United States*, 195 F. Supp. 3d 4, 7 (D.D.C. 2016) (quoting *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992)).  Thus, defendants fail to show that Isserdasani's APA claims are precluded by the Privacy Act.  *See Chen v. Noem*, 1:25-cv-00733, 2025 WL 1163653, at \*6 (S.D. Ind. Apr. 21, 2025) (concluding that "the Privacy Act does not explicitly or implicitly forbid Chen's claims, and the APA waives sovereign immunity against those claims for purposes of seeking injunctive relief").

## 2.  Finality of Agency Action

Defendants next argue that Isserdasani cannot succeed on his APA claims because changing his SEVIS record is not a "final agency action."  (Dkt. #14, at 23.)  The APA "allow[s] any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action' for which there is no other adequate remedy in a court."  *Webster v. Doe*, 486 U.S. 592, 599

(1988) (quoting 5 U.S.C. §§ 701–06). For an "agency action" to be "final," 5 U.S.C. § 704, two conditions must be satisfied: "First, the action must mark the consummation of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). In other words, the final agency action requirement "asks whether a 'terminal event' has occurred." *Driftless Area Land Conservancy v. Rural Util. Serv.*, 74 F.4th 489, 493 (7th Cir. 2023) (quoting *Salinas v. R.R. Ret. Bd.*, 141 S. Ct. 691, 697 (2021)).

Inherent in defendants' argument is its insistence that changing a foreign student's SEVIS record to "terminated" has no impact on his F-1 status. (Dkt. #14, at 23-24.) In support, defendants cite *Yerrapareddypeddireddy v. Albence*, CV-20-01476, 2021 WL 5324894 (D. Ariz. Nov. 16, 2021), which involved two, foreign national students whose SEVIS records were terminated as a "clerical duty" because they were not pursuing a full course of study at an educational institution. Defendants contend that similarly the clerical nature of their ability to update, change, and modify SEVIS records as they wish is found in 8 U.S.C. § 1372(a)(1), which grants DHS authority to "develop and conduct" a record-keeping program for managing information about non-immigrant students in a database. (Dkt. #14, at 25.) In support, defendants offer an affidavit from Andre Watson, who is a senior official with the National Security Division for Homeland Security Investigations. (Watson Decl. (dkt. #15) at ¶ 1.) Watson explains that SEVP simply "amended" Isserdasani's SEVIS record to reflect that he had a "criminal history," with

apparent reference to his dropped misdemeanor ticket for disorderly conduct, "by setting the record designation to terminated." (Id. at ¶ 8.) Although Watson acknowledges that Isserdasani's SEVIS record was terminated due to this charge, which was never prosecuted, he qualifies further that SEVP "has never claimed that it had terminated [Isserdasani's] nonimmigrant status." (*Id*. at ¶¶ 7, 12.)

None of defendants' arguments are persuasive. Notably, Watson does not say that Isserdasani remains in lawful F-1 status or that SEVP would not again terminate his SEVIS record based on that charge without injunctive relief from the court. Indeed, but for the court's TRO, defendants' counsel concede they reserved the right to terminate his SEVIS record for "whatever enforcement-related reason" it wished, including his "dropped misdemeanor charge." (Apr. 28, 2025 Tr. at 5.) Thus, Isserdasani remains vulnerable to more serious consequences without any other recourse. As the court concluded at the preliminary injunction hearing on April 28, 2025, defendants' argument that changing a student's SEVIS record to "terminated" does not also have the effect of terminating their F-1 status is "semantics." (*Id*. at 30.) Other courts have also rejected the argument by defendants that a student's SEVIS record is somehow meaningless. *See Chen*, 2025 WL 1163653, at *7 (concluding that Chen had shown that his SEVIS record and his F-1 status were terminated); *see also Oruganti v. Noem*, No. 2:25-cv-00409, 2025 WL 1144560, *4 (S.D. Ohio Apr. 18, 2025) ("Defendants ultimately conceded, as they must, that termination of the SEVIS record could lead to the revocation of [plaintiff's] F-1 status, which could ultimately lead to deportation – an outcome that the Supreme Court has

14

recognized as 'a drastic measure, often amounting to lifelong banishment or exile'")
(citation omitted).

Moreover, contrary to defendants' argument, plaintiff presents a notice of decision
from USCIS showing that a SEVIS record *is* a manifestation of the student's status, such
that when a student's SEVIS record is "terminated" the student is "without lawful
immigration status" and must seek reinstatement or depart the United States. (Lofti Decl.
Ex. A (dkt. #20-1) at 3.) Although defendants dispute that the notice of decision is
reflective of actual policy or practice, the decision is consistent with the email Isserdasani
received from UW-Madison ISS, which includes a screen shot of his SEVIS record, showing
that his "Status" had been changed to "terminated" by SEVP for "OTHERWISE FAILING
TO MAINTAIN STATUS." (Pl. Compl. Ex. A (dkt. #1-2) at 2.) This is also consistent
with guidance from the U.S. Department of State, which further supports the conclusion
that a student's SEVIS record is intended to reflect his status. The Foreign Affairs Manual,
an "authoritative source" for State Department policies and procedures that govern "the
operations of the State Department, the Foreign Service and, when applicable, other
federal agencies," states that "the SEVIS record is the definitive record of student or
exchange visitor *status* and visa eligibility." 9 F.A.M. 402.5-4(B) (emphasis added).[4]

As for finality, defendants further admitted at the hearing on April 28, 2025 that
Isserdasani cannot challenge the termination of his SEVIS record. (Apr. 28, 2025 Tr. at
9.) Nor did they dispute that Isserdasani suffered consequences upon the termination of

---

[4] The Foreign Affairs Manual, U.S. Department of State, is available at https://fam.stat.gov (last
visited Apr. 30, 2025).

his SEVIS record for the stated reason of failing to maintain his F-1 status, having been advised by UW-Madison that he could no longer attend classes and no longer had work authorization.  In fact, Isserdasani was not told he could return to classes and proceed to graduate until this court entered its TRO.  (Apr. 28, 2025 Tr. at 21.)  Up until that point, Isserdasani was in fear of being picked up by immigration agents every time he left his apartment because his status had been terminated.  (*Id*. at 25.)

Based on this record, defendants do not persuasively demonstrate that when SEVP changed plaintiff's SEVIS record to "terminated" this action had no relation whatsoever to his F-1 student status.  *See Hinge v. Lyons*, No. 25-1097, 2025 WL 1134966, at *4 & n.10 (D.D.C. Apr. 15, 2025) (granting a TRO despite a similar declaration from Watson because "government counsel was unable to confirm that ICE would not interpret its SEVIS record termination and the subsequent action taken by the plaintiff's university in response to that termination, as effectively terminating the plaintiff's F-1 status and providing grounds for the plaintiff to be subject to arrest, deportation, and accruing unlawful presence.").

On this record, therefore, the court rejects defendants' argument that the termination of Isserdasani's SEVIS record and his apparent F-1 status was not a final agency action that implicates his rights and from which there are legal consequences.  *See Doe v. Noem*, No. 2:25-cv-00633, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025) (holding that termination of SEVIS record and student status was a final agency action); *Hinge*, 2025 WL 1134966, at *5 ("If the plaintiff's lawful status in the United States has been revoked, whether directly by ICE or indirectly by his university's correct

interpretation of the action it is required to take in response to ICE's actions, that revocation will affect the plaintiff's 'rights or obligations . . . from which legal consequences will flow.' Thus, the Court concludes that it must grant the plaintiff's request for a temporary restraining order until a further status conference is held in order to allow government counsel to address these ambiguities after conferring with the agency he represents." (omission in original) (quoting *Bennett*, 520 U.S. at 177-78)).  As a result, defendants have failed to show that the termination of Isserdasani's status is not a reviewable final agency action or that he is not substantially likely to prevail on his claim that defendants terminated his status in violation of the APA, as set forth above.

### B. Irreparable Harm and Adequacy of Remedy at Law

As noted previously, Isserdasani faces possible devastating irreparable harm due to the termination of his F-1 student record in SEVIS, which but for entry of this court's TRO would prevent him from completing his four-year undergraduate degree in computer engineering from a premier academic institution in that field just a week away from his expected graduation.  As multiple courts facing similar motions to enjoin the termination of students' F-1 status have recognized, the loss of timely academic progress alone is sufficient to establish irreparable harm.  *Doe v. Noem*, No. 3:25-cv-00023, 2025 WL 1161386, at *6 (W.D. Va. Apr. 21, 2025); *Liu v. Noem*, No. 25-cv-133, 2025 WL 1189760, at *2 (D.N.H. Apr. 10, 2025); *see also Doe v. Noem*, No. 2:25-cv-00633, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (collecting cases holding that interruption of educational programs or progress, including loss of opportunity to participate in post-graduate education programs, can be irreparable harm).  Similarly, plaintiff has shown that

he is at direct risk of having his anticipated OPT rejected but for reinstatement of his SEVIS status.

The evidence before the court further establishes that the link between Isserdasani's SEVIS record and the threat of arrest, detention, and deportation without justification has caused him to suffer mental anguish, as well as fear that is more than speculative. *E.g.*, *Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025) ("[W]ithout prior notice of the revocation of her student visa or the grounds asserted for same, Ozturk, a graduate student in Child Study and Human Development at Tufts University, was approached and surrounded by six officers (several wearing masks and/or hoods), stripped of her cellphone and backpack, handcuffed, and taken into custody in an unmarked vehicle.").  Indeed, at the hearing on April 28, 2025, defendants were unable to give the court any assurance that Isserdasani was in lawful status or that his SEVIS record -- which was reinstated only after the court issued a TRO -- would not again be terminated if additional injunctive relief were not granted.  Given the amount of Isserdasani's efforts towards completing a four-year college degree, his educational expenses, and the potential consequences from a loss of status, the court concludes that Isserdasani has credibly demonstrated that he faces irreparable harm for which he has no adequate remedy at law in the absence of injunctive relief.  *See Jie Fang*, 935 F.3d at 183-85.

## C.  Balancing Analysis

Where a plaintiff satisfies the threshold requirement for a preliminary injunction, courts must then weigh "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving

18

party if it is wrongfully granted." *K.C. v. Individual Members of the Medical Licensing Bd. of Indiana*, 121 F.4th 604, 632 (7th Cir. 2024) (citations and internal quotation marks omitted). "This is a sliding scale -- the more likely [the moving party] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id*. at 633 (alteration in original). Part of this balancing process includes evaluating the public interest and the effects the preliminary injunction -- and its denial -- would have on nonparties. *Id.*

For reasons already stated, Isserdasani has demonstrated a strong likelihood of success on the claim that his SEVIS record and F-1 student status was wrongfully terminated in violation of agency regulations. Further, defendants' actions have threatened Isserdasani's ability to complete his undergraduate degree and have placed in jeopardy his ability to engage in OPT, which he will be unable to undertake without an active SEVIS record and valid F-1 student status, in addition to causing extreme anxiety and fear of detention. Moreover, "[t]he public has a vested interest in a federal government that follows its own regulations." *Doe*, 2025 WL 1141279, at *9.

To that end, although defendants have argued that "the public interest in enforcement of United States immigration laws is significant" (dkt. #14, at 29), they have failed to show that DHS has complied with immigration laws or regulations in this case or that Isserdasani's status was revoked due to his failure to maintain lawful status. Based on this record, therefore, Isserdasani has established that he faces irreparable harm, whereas defendants have demonstrated none, particularly in comparison. Because all relevant factors favor plaintiff, the court concludes that he is entitled to preliminary injunctive

19

relief. *See Liu v. Noem*, No. 25-cv-133, 2025 WL 1233892 (D.N.H. Apr. 29, 2025) (granting a preliminary injunction in favor of an international student claiming that his SEVIS record and F-1 student status were terminated by the defendants in violation of the APA).

### D. Bond

Defendants have requested that Isserdasani be required to post a bond under Fed. R. Civ. P. 65(c), which requires a party seeking preliminary injunctive relief to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." (Dkt. #14, at 30.) However, a district court may "waive the requirement of an injunction bond" when "the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (finding "no reason to require a bond"). When pressed at the hearing on April 28, 2025, to specify the costs and damages defendants may incur as the result of an injunction issuing in this case, their counsel offered none and have not supplemented the record with any. Accordingly, Isserdasani shall not be required to post a bond pending enforcement of the preliminary injunction granted by this court.

ORDER

IT IS ORDERED that pending final adjudication of the issues in this case, plaintiff

Krish Lal Isserdasani's motion for a preliminary injunction is GRANTED as follows:

1) Defendants are enjoined from terminating plaintiff Isserdasani's F-1 student status records from the Student and Exchange Visitor Information System ("SEVIS") without further showing and approval by this court.

2) Defendants are further enjoined from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate his SEVIS records.

Entered this 7th day of May, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge